Coös,
Dec., 1900.

### Ross & a., *Ex'rs*, v. LEAVITT & a.

The right of redemption may be exercised by any person interested in the mortgaged premises, or privy in estate with the mortgagor.

Whether in a given case there has been an abandonment of possession taken for the purpose of foreclosure, or a waiver after its completion, are questions of fact determinable, in the absence of express evidence, by proof of acts or intentions on the part of the mortgagee which, as matter of law, are inconsistent with the existence of a valid foreclosure.

Where a mortgagee enters upon premises for the purpose of foreclosure by taking and maintaining peaceable possession for one year, his acceptance within that period of a sum realized from the profits of the land, paid by a tenant in common of the mortgagor in pursuance of an agreement extending the time of redemption and providing for a conveyance of the premises upon the extinguishment of the mortgage debt, operates as a relinquishment of the foreclosure proceedings as to a subsequent mortgagee of the co-tenant.

The publication of notice of an entry upon premises for the purpose of foreclosure is not notice of the continuance of possession necessary for the completion of the same.

BILL IN EQUITY, to redeem from a mortgage. Facts found by a referee. The plaintiffs claimed to redeem as owners of a mortgage made by Dudley Leavitt to Jacob Benton of a one third interest in the township of Odell, excepting certain lands therein sold to one Thompson and one Jackson, from a mortgage made by Leavitt to one Holyoke of the whole township, which antedated the plaintiff's mortgage. The main question was whether Holyoke's mortgage was foreclosed by him by peaceable entry and possession for one year. Whether there was such a foreclosure was submitted as a question of law by the referee, at the request of the parties, upon facts found which appear in the opinion.

*George H. Bingham, Chamberlin & Rich,* and *Henry C. Ide* (of Vermont), for the plaintiffs.

*Drew, Jordan & Buckley* and *Thomas F. Johnson,* for the defendants.

PARSONS, J. The plaintiffs, as mortgagees of Leavitt's one third interest in the land, had the right to redeem from the prior mortgage under which the defendants claim. *Moore* v. *Beasom,* 44 N. H. 215 ; *Thompson* v. *Paris,* 63 N. H. 421, 425. They can now redeem unless such right has been destroyed since their mortgage title was acquired from Leavitt.

The defendants, the Weston Lumber Company, claim the premises in fee by sundry conveyances resting upon a quitclaim deed from Holyoke, the owner of the mortgage from which the plaintiffs seek to redeem, to the defendant Libbys, dated August 20, 1886, in which the estate conveyed is described by Holyoke as " all right, title, and interest in and to " the premises embraced in the mortgage, "intending hereby to convey all the interest which " Holyoke " acquired by said mortgage, and including all rights and interest acquired by proceedings to foreclose the same, instituted or commenced on the thirtieth day of May, A. D. 1885 ; said mortgage being hereby assigned and transferred to the said Libbys, together with the notes secured thereby, so far as the amounts thereof remain due and unpaid." It is not found that in making this conveyance the parties intended to open the foreclosure if one had been made.

The legal purpose and effect of the deed was to transfer to the Libbys such title as Holyoke had. The Libbys, grantors of the Weston Lumber Company, the present owners, did not obtain title in fee unless there was a valid foreclosure of the Holyoke mortgage. Holyoke, at that time the owner of the mortgage, entered upon the mortgaged premises on May 30, 1885, for the purpose of foreclosure by taking and maintaining peaceable possession, for condition broken, for the space of one year. G. L., c. 136, s. 14, cl. II. At this time the state of the title was as follows : Holyoke held a mortgage from Leavitt, dated April 7, 1880, covering the whole township. Sumner Thompson owned 10,000 acres in it. Andrew Jackson owned Columbia Gore, also part of the township. Of the remainder, one third was owned by Leavitt and two thirds by the Libbys, in common and undivided. Thompson, Jackson, and the Libbys held by conveyances from Leavitt of later date than the Holyoke mortgage. Jacob Benton had a mortgage from Leavitt, now held by the plaintiffs, of a common third of the township, excepting the lands sold Thompson and Jackson, which was dated November 13, 1883.

Assuming that the entry made and the possession taken and retained was otherwise sufficient to foreclose the mortgage upon the land owned in common by Leavitt and the Libbys, we think Holyoke's subsequent action and purpose during the year, as found by the referee, inconsistent with an intention to hold the land for that purpose.

Whether in a particular case there was an abandonment of the foreclosing possession, or a waiver after its completion, are questions of fact determinable, in the absence of express evidence, by proof of acts or purposes on the part of the mortgagee inconsistent with a purpose to complete or insist upon the foreclosure. *Couch* v. *Stevens,* 37 N. H. 169; 2 Jones Mort., ss. 1265, 1268, 1270. The referee at the request of the parties has not found the fact, and the case would of necessity be recommitted to him unless some facts are found which, as matter of law, are inconsistent with the existence of a valid foreclosure. It is well settled that the acceptance by the mortgagee of payment in whole or in part of the mortgage debt is a waiver of any foreclosure, complete or in process, because such acceptance is inconsistent with an intention to rely upon the security for payment. The mortgagee cannot have both the land and the debt. *Scott* v. *Childs,* 64 N. H. 566, 568; *Moore* v. *Beasom,* 44 N. H. 215; *Gould* v. *White,* 26 N. H. 178, 190; *McNeil* v. *Call,* 19 N. H. 403, 414, 416; *Deming* v. *Comings,* 11 N. H. 474, 483; *Batchelder* v. *Robinson,* 6 N. H. 12.

February 23, 1886, one of the Libbys, with knowledge of the foreclosure proceedings commenced May 30, 1885, paid to the mortgagee upon the mortgage debt $7,041.91. The acceptance of this sum, considered merely as a payment, operated as a waiver or relinquishment of the foreclosure proceedings as to the Libbys who made the payment, as to Leavitt who was tenant in common with them, and as to Benton, Leavitt's mortgagee. All the payments that had been made on the Holyoke mortgage were made from "stumpage," and the payment of February 23, 1886, was made from this account. It is not distinctly stated, but we infer from other statements in the report and papers referred to, that this means that permits were given various persons to cut lumber in the township upon payment of a fixed price per thousand feet, which payments were applied on the mortgage debt, so that all that had been applied in reduction of the mortgage debt had come out of the property. It does not appear whether this stumpage came from that portion of the township covered by Benton's mortgage. If it did, it was as much a payment by Benton as by the Libbys, as it came from his security.

The force of this receipt of payment as a waiver of foreclosure is claimed to have been nullified by the fact that it was made in

pursuance of an oral agreement, which was reduced to writing April 26, which both parties understood in February would be made, and in contemplation of which the payment was made. The most favorable view that can be taken of this explanation of the payment of February 23 is to consider the written agreement as if executed on that date when it was made orally. Upon this agreement is founded the deed of August 20, under which the Weston Lumber Company now claim to own the fee. The mortgage having been reduced to $16,000, Holyoke agreed " to sell and convey, quitclaim and assign to said Libbys, their heirs and assigns, all his right, title, and interest in and to " the mortgaged premises " by appropriate deeds of quitclaim or assignment, including all rights acquired by said foreclosure proceedings; provided they, the said Libbys, their heirs or assigns, shall pay him, the said Holyoke, the sum of sixteen thousand dollars with interest annually, to be compounded if not paid promptly, as follows: Four thousand dollars on or before the first day of June, 1887, and four thousand dollars each year from and after that date until the whole sum and interest is fully paid; said Libbys and their heirs to have the right to pay the whole or any part of said sums larger than the sums so specified at any time earlier than aforesaid, and no forfeiture is to be incurred by any failure to pay any of said sums at maturity, provided the same be paid within thirty days after such maturity, with interest. . . . And the said Libbys, in consideration of the premises, do hereby agree to become purchasers of said property on the terms aforesaid and to pay therefor the sum specified at the times and on the terms and conditions hereinbefore set forth."

It is found that the primary intention on the part of the Libbys was to extend the time of redeeming said mortgage; and of Holyoke, to reduce his indebtedness and continue the balance of his claim at interest. This agreement was reduced to writing April 26, 1886. It exactly carried out the intention of the parties as found. It extended the time of redemption, waiving the effect of the payments made, from May 30, 1886, for the last $4,000 of the debt, as late as July 1, 1890, and gave Holyoke a chance to keep a portion of his claim on interest to that time. The agreement, though reduced to writing and signed April 26 (more than a month before the year of foreclosure expired on May 30), recites that the mortgage had been foreclosed. This statement was untrue. The transaction, therefore, was not a sale of the land, but was an agreement for the transfer of Holyoke's interest, whatever it might be, and provides for an assignment as well as a quitclaim deed. If the transaction were merely a payment, as against Leavitt and Benton, the mortgage would be upheld for the protection of the Libbys who paid; but the defendants claim more than this,— that the

right of redemption has been extinguished. The agreement at least extended the time of payment in accordance with its terms. Within that time it was performed by the Libbys, and the interest of Holyoke transferred to them. The question therefore is: What was the character of Holyoke's title? Had he perfected his fore-closure? It is clear that he had not. He did not hold the pos-session taken for condition broken, for one year, for the purpose of foreclosure. Although there was no physical interruption of the constructive possession of the land acquired by the entry, his holding after the payment and agreement of February 23 was not under the foreclosure but under the agreement. Under it he agreed to account for all stumpage for logs which he should cut himself or permit others to cut, at an agreed rate per thousand, upon the balance of the indebtedness. Such an agreement, made before the completion of the foreclosure, was an agreement to hold the land for payment of the debt from the profits, and not to hold it for foreclosure. Whatever reduction of the debt should be made from the land of which Benton had a mortgage would be as much a payment by him as by the Libbys.

The agreement provides for a continuance of the course by which former payments were made. In substance, Holyoke agreed, instead of holding the land for foreclosure, to hold it for the pur-pose of taking payment out of it. It does not appear, as above noted, whether the stumpage previously paid came from the land covered by Benton's mortgage, or from the Thompson and Jackson tracts; but the agreement made no distinction. Under it the whole debt could be paid from Benton's security. An agreement to hold the land for such purpose is inconsistent with a holding for fore-closure, and, being entered into prior to the expiration of the year, prevented its completion.

As the right to redeem is not cut off by foreclosure, no laches or delay in bringing the application short of the period of the statute of limitations can defeat it. There is no estoppel. The publication of the notice was constructive notice to Benton of the commence-ment of the foreclosure. *Howard* v. *Handy*, 35 N. H. 315. It was not notice of the continuance of the possession for the eleven months thereafter necessary to complete the foreclosure. It is not found that he had any knowledge of the conveyances to the Libbys, Harold Weston, and the Weston Lumber Company. The record of these conveyances subsequent to the date and record of his mortgage was not even constructive notice to him. *Bates* v. *Norcross*, 14 Pick. 224, 231. The Weston Lumber Company had notice from the record that their title depended upon a foreclosure which was invalid unless the necessary possession had been held for the statutory period. This fact was not shown by the record,

but was open for determination whenever controversy should arise. *Bartlett* v. *Sanborn*, 64 N. H. 70; *Ray* v. *Scripture*, 67 N. H. 260. The conclusion is that the plaintiffs are entitled to redeem.

*Case discharged.*

All concurred.